IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY LOUIS FUNYAK and<br>SHARON LYNN FUNYAK,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>PENNROSE MANAGEMENT COMPANY<br>and MONROE MEADOWS HOUSING<br>PARTNERSHIP, LP,<br><br>　　　　　Defendants. | 2:19-CV-01331-CCW |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss filed by Defendants Pennrose Management Company and Monroe Meadows Housing Partnership, LP. ECF No. 13. For the reasons that follow, Defendants' Motion will be GRANTED and Plaintiffs Gregory and Sharon Funyak's Complaint will be DISMISSED WITHOUT PREJUDICE. The Funyaks will be given leave to file an amended complaint.

**I.	Background**

　　**A.	Factual Allegations**

In this case, the Funyaks, proceeding *pro se*, claim that Pennrose Management and Monroe Meadows discriminated against them on the basis of disability by declining to lease an apartment to them, in violation of the Fair Housing Act, 42 USCS § 3601, *et seq.*,, the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and the Rehabilitation Act, 29 U.S.C. §§ 701, *et seq. See* ECF No. 6 at 1. The Funyaks also make a claim for breach of contract and assert that they are entitled to punitive damages. *See* ECF No. 6 at 1, 6.

The relevant facts alleged in the Funyaks' Complaint are as follows. Mr. Funyak has "three major disabilities." Mr. Funyak has been receiving Social Security Disability benefits since 1995.

*See id.* Mr. Funyak's SSDI benefits are the Funyaks' sole source of income since Mr. Funyak lost his part-time job in 2014. *See id.* Plaintiffs do not specify what Mr. Funyak's disabilities are, nor do they allege that Ms. Funyak is disabled. The Funyaks are beneficiaries of Section 8 housing assistance and were first approved for Section 8 assistance in or around February 2014. *See id.* at 4.

In August 2018, the Funyaks met with the property manager of the Monroe Meadows development in Monroeville, PA, and submitted an application to rent a two-bedroom townhome. *See id.* at 1–2. At that time, the Funyaks believed they had been approved to rent the unit because the property manager told them they had "passed" a "credit/criminal check" and then "proceeded to fax [their] section 8 voucher to the Allegheny Housing Authority to start the process for us to move in." *See id.* at 2.

On August 21, 2018, the Allegheny County Housing Authority ("ACHA") inspected the unit. *See id.* By e-mail dated August 24, 2018, ACHA determined that the unit had failed the inspection. *See id.* On September 5, 2018, while waiting for the unit to be reinspected and approved by ACHA, the property manager allegedly informed Ms. Funyak that, assuming the unit passed the re-inspection, the Funyaks could expect to move in at the beginning of October. *See id.* By letter dated September 6, 2018, however, Monroe Meadows informed the Funyaks that their rental application had been denied due to "poor rental history." *See id.* at 2–3.

According to the Funyaks, a negative reference from one of their former landlords, Brian Barcic, precipitated the denial of their rental application. *See id.* at 3. The Funyaks previously rented from Mr. Barcic from 2007–2014. *See id.* at 4. The Funyaks concede that, while renting from Mr. Barcic, they fell behind on rent payments sometime in 2014. *See id.* at 3–4. Mr. Barcic obtained a judgment against them for the back rent, but never formally evicted the Funyaks. *See*

2

*id.* at 4. They then moved to a new residence a few months later. *See id.* The Funyaks claim that their current landlord informed them that Mr. Barcic provided a generally positive reference when they moved, aside from noting that they "owed money from a rental judgment." *See id.* at 3. Ultimately, the Funyaks, who rely on Mr. Funyak's social security disability benefits, state that the missed rent payments were the result of Mr. Funyak losing his part time job in April 2014. *See id.* at 4.

The Funyaks appealed the denial of their rental application to Monroe Meadows. *See id.* at 3. They argued that because Mr. Funyak is disabled, Monroe Meadows should have provided them with a reasonable accommodation in the form of "continu[ing] to process our rental application." *See id.* at 4. In other words, the Funyaks believe Monroe Meadows should have overlooked their prior, negative rental history because they "only incurred the rental judgment for the last few months of living [at their prior residence] because of [Mr. Funyak's] job loss which was 'directly related to his disabilities.'" *Id.* at 4–5. The Funyaks' appeal to Monroe Meadows was unsuccessful. *See id.*; *see also* ECF No. 23 at 2.

The Funyaks then filed a complaint against Monroe Meadows with the Department of Housing and Urban Development ("HUD"). *See* ECF No. 6 at 5. The Funyaks' allege that Ms. Funyak submitted an online complaint to HUD on October 22, 2018, and that the Funyaks' HUD complaint was "official[ly]" filed on November 30, 2018. *See id.* HUD issued a "No Cause" determination, via e-mail, on May 28, 2019. *See id.* The Funyaks continued to press their case with HUD, eventually receiving a "Final Investigative Report" on June 3, 2019, and then a letter, dated September 27, 2019, both of which reiterated HUD's "No Cause" determination. *See id.* at 6.

**B.     Procedural History**

The Funyaks filed an application to proceed in forma pauperis, *see* ECF No. 1, which was approved by the Honorable David S. Cercone, then presiding over this case. *See* ECF No. 4. The Funyaks then filed their Complaint. *See* ECF No. 6. Monroe Meadows and Pennrose waived service, *see* ECF No. 12, and then moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 13. Having been fully briefed, the Motion is ripe for disposition.

**II.    Standard of Review**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id*. Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id*., and be "sufficient to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connolly v. Lane Constr. Corp.,* 809 F.3d 780, 789 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss").

While a "pro se pleading" like the Funyaks' "must be 'liberally construed,'" *Berkery v. Equifax Info. Servs.*, 429 F.Supp.3d 24, 29 (E.D. Pa. 2019) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), it "must still 'contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'"  *Baker v. Younkin*, 529 Fed.Appx. 114, 115 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678)).  Furthermore, when deciding a Rule 12(b)(6) motion, the Court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citations omitted).  Thus, for the purpose of deciding the present Motion, while the Court accepts as true the facts alleged in the Funyaks' Complaint and views those facts in the light most favorable to the Funyaks, *see Burtch*, 662 F.3d at 220, the Court will not consider facts originally alleged in, or documents filed for the first time with, the Funyaks' Response in Opposition to Defendants' Motion to Dismiss, except to the extent such materials "allow[] us to interpret the complaint."  *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.,* 181 F.3d 410, 428 n.8 (3d Cir. 1999) (citations omitted).

**III.   Discussion**

The Funyaks' Complaint appears to rest on two general theories. First, that despite being made aware of Mr. Funyak's disabilities, Monroe Meadows and Pennrose failed to provide the Funyaks with a reasonable accommodation by declining to rent a unit to them due to their prior negative rental history. Second, the Funyaks assert a claim for breach of contract against Monroe Meadows for allegedly "processing our section 8 voucher with the Allegheny County Housing Authority before they denied us after initially approving us." ECF No. 6 at 1.

Defendants argue that dismissal is warranted under Rule 12(b)(6) because (1) the Funyaks have not successfully pled facts necessary to state a claim under any of the federal statutes cited; (2) the Funyaks have not pled facts necessary to support a claim for breach of contract;  and (3) the Funyaks have not pled any facts to support a claim for punitive damages. *See* ECF No. 13 at 7. The Court will address each argument in turn.

The Court has federal question jurisdiction over the Funyaks' failure to accommodate claims under the Fair Housing Act, the ADA, and the Rehabilitation Act, *see* 28 U.S.C. § 1331, and thus may exercise supplemental jurisdiction over the alleged breach of contract claim. *See* 28 U.S.C. § 1367(a).

**A.   The Complaint Does Not Allege a Viable Failure to Accommodate Claim**

As noted above, the Funyaks base their failure to accommodate claim on the Fair Housing Act, the ADA, and the Rehabilitation Act. "Since the requirements of the FHAA, ADA and Rehabilitation Act are essentially the same, courts have concluded that the FHAA analysis can be applied to ADA and Rehabilitation Act claims as well in such cases where claims are brought under all three statutes." *Yates Real Estate, Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F.Supp.3d 889, 914 (D.N.J. 2019) (quoting *In re Lapid Ventures, LLC*, No. 10-6219, 2011 U.S. Dist. LEXIS 63973, at *14 (D.N.J. June 13, 2011)).

In order to plead a Fair Housing Act claim based on an alleged failure to provide a reasonable accommodation, a plaintiff must show that (1) he or she suffers from a disability (as defined by 42 U.S.C. § 3602(h)(1));  (2) the defendant knew or should have known of the disability; (3) a reasonable accommodation of the disability might be necessary to afford the plaintiff an equal opportunity to use and enjoy the dwelling;  and (4) defendant refused to make such reasonable accommodation.  *See Bell v. Tower Mgmt. Serv., L.P.,* Civil Action No.: 07-CV-5305, 2008 U.S. Dist. LEXIS 53514, at *8 (D.N.J. July 15, 2008) (quoting *United States v. Port Liberte Condo 1 Ass'n, Inc.*, Docket No. 04-2783, 2006 U.S. Dist. LEXIS 70573 at *13 (D.N.J. Sept. 27, 2006); *see also Dr. Gertrude A. Barber Ctr., Inc. v. Peters Twp.*, 273 F.Supp.2d 643, 652 (W.D. Pa. 2003) ("To establish a prima facie case, a plaintiff must show that the requested accommodation was necessary in order for handicapped persons to have an equal opportunity to use and enjoy a dwelling.") (citing *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F.3d 442, 457 (3d Cir. 2002)).

The Funyaks' failure to accommodate claim will be dismissed because it does not identify a nexus between Mr. Funyak's alleged disabilities and the requested accommodation.  *See Lapid-Laurel* 284 F.3d at 457 (3d Cir. 2002) ("[T]he plaintiff in an FHAA reasonable accommodations case must establish a nexus between the accommodations that he or she is requesting, and their necessity for providing handicapped individuals an 'equal opportunity' to use and enjoy housing.").  Put another way, an accommodation must serve to ameliorate the effect of a plaintiff's disability, thus permitting them to use and enjoy a dwelling on a par with a non-disabled person. *See id.* ("[I]f the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be 'necessary.'") (quoting *Bryant Woods Inn, Inc. v. Howard Cty.*, 124 F.3d 597, 604 (4th Cir. 1997)).  Paradigmatic examples include accommodations such as waiving a "no pets policy" where an individual requires a seeing eye dog or providing reserved parking in spite

of a general "first-come-first-served" parking policy where an individual's mobility is impaired. *See Bell*, 2008 U.S. Dist. LEXIS 53514, at *21.

As pled here, however, the requested accommodation is based, ultimately, on the Funyaks' precarious financial situation, not Mr. Funyak's disabilities. The Funyaks concede that Defendants denied their rental application due to prior negative rental history. And, although they label Mr. Barcic's reference letter as "defamatory," the Funyaks admit that they fell behind on their rent in 2014 and that Mr. Barcic obtained a judgment against them for that back rent. Finally, while it is true that the Funyaks attribute Mr. Funyak's job loss in 2014 (and thus the missed rent payments) to his disabilities, this falls short of showing the kind of connection "between the proposed accommodation and the 'equal opportunity' in question, such that the requested accommodation provides a 'direct amelioration of a disability's effect.'" *Baratta v. N.H. Ave. Ins., L.L.C.*, 2010 U.S. Dist. LEXIS 156581 (D.N.J. May 27, 2010) (quoting *Lapid-Laurel*, 284 F.3d at 460). In other words, the Complaint fails to articulate why the requested accommodation (that Defendants disregard the Funyaks' prior negative rental history) is necessary to directly relieve any burden on Mr. Funyak's use and enjoyment of the dwelling directly caused by his disabilities (which are unspecified).

It is true that under certain circumstances financial hardships can serve as the basis for a failure to accommodate claim under the FHAA. In *Fair Hous. Rights Ctr. v. Morgan Props. Mgmt. Co., LLC*, Civil Action No. 16-4677, 2017 U.S. Dist. LEXIS 55249 (E.D. Pa. Apr. 11, 2017), for example, the court found that an inflexible policy requiring that tenants pay rent on the first of the month, while facially neutral, imposed an unfair extra burden on SSDI recipients who typically rely on such benefits as their sole source of income but whose SSDI benefits may not be distributed until the later in a given month. In that situation, there was a direct connection between the

requested accommodation (modified payment schedule) and the effects of the SSDI beneficiaries' disabilities (reliance on fixed income payment schedule). Here, on the other hand, the impediment to the Funyaks renting from Defendants is their poor rental history—a problem that affects people of limited means, whether or not they happen to also be disabled.

Because the Funyaks have not established the necessary connection between Mr. Funyak's disabilities and the requested accommodation, their Complaint will be dismissed without prejudice.

### B. The Complaint Fails to Plead a Breach of Contract Claim

In their breach of contract claim, the Funyaks appear to allege that by (1) indicating they had passed the "credit/criminal check"; (2) faxing their Section 8 voucher to ACHA; and (3) allegedly giving an expected move-in date conditioned on the unit passing ACHA's inspection, Monroe Meadows breached an agreement to rent the unit to the Funyaks. The Court will dismiss the Funyaks' breach of contract claim because, even if we exercised our discretion to retain supplemental jurisdiction over this state law claim despite our dismissal of all federal claims in this case, the Funyaks' Complaint fails to state a claim for breach of contract.

Under Pennsylvania law, "[a] valid, binding contract exists when the parties have manifested an intent to be bound, the terms are sufficiently definite, and there is consideration." *MDNet, Inc. v. Pharmacia Corp.*, 147 Fed. Appx. 239, 243 (3d Cir. 2005) (citing *In re Estate of Hall*, 731 A.2d 617, 621 (Pa. Super. Ct. 1999)). As such, "three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.* 137 A.3d 1247, 1258 (Pa. 2016) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)). "[A] contract may be manifest orally, in writing, or as an inference from the acts and conduct of the

parties." *Id.* (quoting *J.F. Walker*, 792 A.2d at 1272). Pennsylvania courts "will find the parties' agreement enforceable as a contract 'when the parties to it 1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity.'" *Helpin v. Trs. of the Univ. of Pa.*, 969 A.2d 601, 610 (Pa. Super. Ct. 2009) (quoting *Weavertown Transp. Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. Ct. 2003)). Furthermore, "[a]n agreement is expressed with sufficient clarity 'if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy.'" *Id.* at 610–611 (quoting *Greene v. Oliver Realty, Inc.*, 526 A.2d 1192, 1194 (Pa. Super. Ct. 1987)).

Here, the Funyaks allege that Monroe Meadows' property manager told them that they had "passed" the "credit/criminal" check, showed them "the proposed unit," and "proceeded to fax [their] section 8 voucher to the Allegheny Housing authority." These facts, taken as true, stop short of alleging the existence of a contract, the essential terms of such a contract, or any breach of such a contract. As such, the Court will dismiss, without prejudice, the Funyaks' breach of contract claim.

## C.     The Complaint Fails to Plead a Claim for Punitive Damages

The Funyaks' Complaint also asserts a demand for punitive damages. Although punitive damages are not available under the Rehabilitation Act, *see Kowalski v. Postmaster Gen. of the United States,* 811 Fed. Appx. 733, 737 (3d Cir. 2020), or Title II of the ADA, *see Bowers v. NCAA,* 346 F.3d 402, 429 (3d Cir. 2003), punitive damages are available under the Fair Housing Act. *See Alexander v. Riga,* 208 F.3d 419, 430–431 (3d Cir. 2000) (noting punitive damages are available under the Fair Housing Act "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.") (quoting *Smith v. Wade,* 461 U.S. 30, 56 (1983)). Furthermore, punitive damages generally are not recoverable under Pennsylvania law for a breach of contract claim. *See*

*DeHart v. HomEq Servicing Corp.*, 679 Fed.Appx. 184, 189 (3d Cir. 2017) (citing *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 147 (3d Cir. 2000)).

Of course, the availability of punitive damages presupposes the existence of a viable claim. Because the Court will dismiss the Funyaks' failure to accommodate claim under the Fair Housing Act, and there can be no independent claim for punitive damages standing alone, any claim for punitive damages will also be dismissed. If the Funyaks choose to file an amended complaint, they may reassert their request for punitive damages with respect to a Fair Housing Act claim.

### IV.     Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is hereby GRANTED and the Complaint is DISMISSED WITHOUT PREJUDICE. Because the Court does not conclude at this time that amendment would be inequitable or futile, *see Phillips v. Cty. of Allegheny,* 515 F.3d 224, 236 (3d Cir. 2008), the Funyaks may attempt to cure the deficiencies identified above and may file an amended complaint on or before **August 11, 2021**. The Funyaks are advised to make any such amended complaint their last, best effort to state claims against Defendants, as the Court is not inclined to provide additional opportunities to amend. Finally, should the Funyaks choose not to file an amended complaint, the dismissal of their Complaint will be converted to a dismissal with prejudice.

DATED this 21st day of July, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record